## COFFIN v. MORRILL.

Land purchased by a married woman with the proceeds of a legacy, given to her by one of her relatives, which the husband has declined to reduce to his possession, is not chargeable with the debts of the husband.

Land purchased by a married woman with the proceeds of the sale of other land, purchased by her with the proceeds of a legacy, which her husband has refused to reduce to his possession, or with money received as damages for a highway laid across such land, or with money received as damages for flowing such land, is not liable to the husband's debts.

The wife is entitled to hold, against the husband's creditors, land in good faith purchased by her and conveyed to her, where she has paid from funds belonging to herself a principal part of the purchase-money; though her husband may have joined with her in a note and mortgage of the property to secure the rest of the purchase-money.

But if the purchase is made by the wife, with the fraudulent purpose that the husband should erect buildings upon the land, to be kept out of the reach of creditors, it will be a fraud on them, which will render her title unavailable.

WRIT OF ENTRY. The demandant in proof of his title to the premises demanded, introduced evidence, that Ara Morrill, the husband of the tenant, died seised of the property; his right to the same was sold by virtue of a license from the Court of Probate, and the demandant holds the title under that sale.

The tenant then introduced deeds of the several parts of the premises from J. Sawyer, F. & F. Fisher, and the Contoocook Manufacturing and Mechanics' Company, who were shown to have had an earlier seizin than that of Ara Morrill to herself.

The evidence of both parties tended to show, that Ara Morrill was embarrassed in his affairs, and had, before the purchase of these premises, very little property in his possession; that the purchase of the first tract was made by Ara Morrill, with money which had fallen to his wife from estates of her deceased relatives, which her husband had never claimed, nor reduced to his possession, but which had been loaned on a note payable to her; and the conveyance was made to her.

The second tract was obtained by an exchange of part of the first.

It appeared that, soon after the first purchase, Ara Morrill erected a house and other buildings upon the land, and it was

contended by the demandant, that the evidence in the case showed that the purchase of the land was made by the tenant with the fraudulent purpose of enabling her husband to erect these buildings with money of his own, or by means of his own credit, and thus to secure so much property from the attachments of his creditors; and that if this was proved, the tenant could not be permitted to carry out this fraud by now claiming the land.

To meet this ground, the tenant offered evidence to show, that a part of the land first purchased had been sold for the purpose of making a canal, and a part laid out as a public highway, and a part of the three purchases had been sold as a building lot, and that money sufficient to pay for the erection of these buildings had been thus acquired, and contended that this money, being derived from her property, was also hers. Upon these points the Court charged the jury, that if the note from which the first purchase was paid for, was the property of the wife, derived from sources independent of her husband, and he had declined to reduce it to his possession, it was to be regarded as her separate property; and in that case the land purchased with it, and the land acquired by exchange of part of that land, and the money arising from the sale of part of it, and the damages awarded on the laying out of a highway across it, if not claimed by the husband, were hers. But if the evidence satisfied them that the purchase was made with the fraudulent purpose suggested by the demandant, the tenant could not be permitted to claim the property against the creditors of her husband's estate.

The residue of the demanded premises was purchased of the Contoocook Manufacturing and Mechanics' Company, and it appeared, that the purchase-money, $400, was settled for in this way. The Contoocook Company had raised their dam and caused the water to flow back into the cellar of the house on the premises first purchased, for which they agreed to allow $100 as damages. A note was given for the balance, $300, signed by Ara Morrill and his wife, and secured by a mortgage of the property executed by them. Of this note about one half had been paid before the decease of Ara Morrill; by whom was not

30 *

distinctly shown, but there was evidence from which the jury might infer, that it was paid from money arising out of the earlier purchases.

The Court charged the jury, that if they found the $100, allowed as damages towards the price of the land, was the money of the wife, and the money paid upon the note was her money, as being funds arising from her property, not claimed by her husband, the land would belong to her.

The jury found a verdict for the tenant, which the demandant moved to set aside on account of these instructions to the jury.

*H. A. Bellows,* (with whom was *Butler,*) for the demandant, contended

I. That a note payable to the wife is the property of the husband, without being reduced to possession. *Beckwith* v. *Baxter,* 3 N. H. Rep. 67; *Shuttleworth* v. *Noyes,* 8 Mass. 229; *Savage* v. *King,* 5 Shep. 301; Reeve's Dom. Rel. 60, 62, 127; *Commonwealth* v. *Manly,* 12 Pick. 173; *Paine* v. *Thompson,* 17 Pick. 391; *Clapp* v. *Stoughton,* 10 Pick. 469; *Society* v. *Mather,* 15 Conn. 587; *McMilage* v. *Halloway,* 1 B. & A. 218. If this is law in New Hampshire, then the original purchase was made with the money of the husband, and the charge of the Judge was incorrect.

II. However the original purchase may have been, the husband had a life-estate in the land, and therefore the charge of the Judge, that the damages awarded for the highway should be regarded as belonging to the wife, was exceptionable.

III. The instructions in regard to the last tract were incorrect, because the damages awarded for the injury to the land belonged to the husband, he having at least a life-estate, and as to the rest, it was in law, all paid by the husband, the note as to the wife, being merely void. There was, then, no evidence that the $100 was the money of the wife, and the payment upon the note after it was given could have no effect upon the title conveyed by the deed.

*Pierce & Minot,* (with whom was *Smith,*) for the tenant, contended that,

Coffin *v.* Morrill.

I. 1. A husband may refuse to reduce a legacy to his wife into his possession, and permit her to hold it to her separate use. *Parsons* v. *Parsons*, 9 N. H. Rep. 321; *Marston* v. *Carter*, 12 N. H. Rep. 159.

2. A note to a *feme covert* does not necessarily vest absolutely in the husband. In such case the husband may elect to let the wife have the benefit of it, or take it to himself. *Gates* v. *Madely*, 6 Mees. & Wels. 468; *Draper* v. *Jackson*, 16 Mass. 486; *Haywood* v. *Haywood*, 20 Pick. 517; *Phelps* v. *Phelps*, 20 Pick. 559. Or he may give her a qualified interest by joining her in a suit on it. Ch. Pl. 33; Ch. Bills, 26.

To carry out the decisions in this State, it must be held, that it is immaterial what shape the property of the wife may take, it must still be regarded as her property; and her right to it would not be affected by any act of the husband, so long as he made no claim to it, and did nothing to reduce it to his possession.

II. The cases last referred to are also applicable to this point, that a husband may join his wife in a suit for rents and profits of her real estate accruing during coverture, and so in all cases, where she is the meritorious cause of action. The action and benefit in such cases survives to the wife. Ch. Pl. 34. If the husband may thus give to his wife the benefit of her property, there seems no equitable objection to his doing it directly. No part of the husband's property is in this way passed to the wife.

III. The deed from the Contoocook Company was made to the defendant. Her note was good and valid, as a foundation for the mortgage back, and as part of that security. Nothing having ever been paid by the husband or out of his estate towards the land, the conveyance to the wife works no fraud to his creditors.

Bell, J. We look for the law of this State, in relation to the rights of husband and wife in the property of the wife, to the later decisions of our own Court, sustained as they have been by the spirit of our legislation. In *Parsons* v. *Parsons*, 9 N. H. Rep. 321, the law is thus laid down as to some interests of the

wife: ",Neither a legacy to a wife, nor a distributive share in an estate in which she is interested, vests in the husband absolutely. They are classed with, and sometimes called her *choses in action*. If the husband reduce them to possession, as he may, they become absolutely his own, and he may release them, or assign them for a valuable consideration, and by a deed to which she is not a party. But until he has reduced them into possession, or in some other way barred her right, he has only a qualified interest; and if he die first, the right survives to her. And possession by the husband, as executor or trustee, is not a sufficient reduction into possession to bar her of her right."

In *Marston* v. *Carter*, 12 N. H. Rep. 164, it is said, "But we hold, that a legacy to a wife does not vest absolutely in the husband. He has a right to reduce it into possession, but if he does not exercise this right, it survives to his wife. And he may decline to do this, and permit his wife to hold it to her own separate use. The decisions here have not gone so far as to authorize the creditor by any process to appropriate a legacy or distributive share of the wife to the payment of her husband's debts without his assent, and before he has asserted a title to it. The right of the creditor must depend upon the particular views to be taken of the right of the husband. If the right of the husband, until some act be done by him, be regarded not as a vested right in the property itself, but as a marital right or power, which he may exercise by some act of ownership, upon which an interest in the property becomes vested, a creditor, without the assent of the husband, cannot reach the property, unless the case is an exception to the general rule. We are not aware of any other marital right which the law permits him to exercise in his character of a creditor."

In *Wheeler* v. *Moore*, 13 N. H. Rep. 481, it is said " the husband's right to claim the property," (a distributive share, fallen to the wife,) does not make it his, nor is he obliged to exercise that right. He may omit to do so, and on his death it will survive to the wife, not by descent from him, or title derived through him, but in her own right, as heir of her sister. If the husband refuse or neglect to reduce it into possession, or to assert

a claim to it, it is clear, that after his death, neither his heirs nor his creditors can assert any title to it, nor could his administrator in their behalf.    The right of the husband to take the distributive share of the wife to his own use, is a marital right.    A creditor cannot exercise rights of that character against the will of the husband.

The case here shows that the tenant purchased part of this property, and other land adjoining, with money which had fallen to her from estates of some of her relatives, deceased, which her husband had never claimed nor reduced to his possession, and which had been loaned on a note payable to her.    At this stage the property seems to come precisely within the principle of the cases decided here.

While such decisions have been made by the Courts, the law in relation to the separate estate of the wife has been greatly changed by the legislature, and the wife may now hold all her own property independent of the control of her husband, if such is the marriage contract of the husband and wife, without the intervention of a trustee ; and she may in the same manner hold and dispose at her own pleasure of all property given her by deed or will expressly for her exclusive use, with or without a marriage contract.    In respect to all such property, married women in such cases have the same rights and remedies in their own name, both in law and equity, and are subject to suits upon any contracts respecting such property, or for wrongs done in respect to it, as if they were unmarried.    Stat. 1846, ch. 327, p. 308.    We regard this course of legislation as giving the sanction of the legislature to the decisions of the Court, in relation to the wife's estate, and as justifying the extension of the same general view to other cases, not embraced in the terms of those decisions, but falling within the like reason.

In this case it is said by the plaintiffs, that, if the decisions made here are sustained, they do not reach this case.    First, as to the second parcel of land.    It was purchased with money derived in part from the sale of a portion of the wife's first purchase, and in part from damages awarded by the selectmen for a part of her land taken for a highway.    The Court instructed

Coffin *v.* Morrill.

the jury, that both these sums, if not claimed by the husband, were the property of the wife. It is contended that this instruction was erroneous; because, it is said, the husband became, by mere force of law, and without any act of his own, seised of an estate of freehold in his wife's land, for their joint lives, or for his own life, and the sale was a sale of his estate, as well as of his wife's, and the damages were also awarded for his interest, as much as to the wife for the residue; and to the extent of that interest, the money received was his money, and the deed of the second parcel, if the money so received was applied to the purchase of land, would make his wife a trustee for him for so much of the purchase-money as legally belonged to him, by virtue of a resulting trust.

That a husband becomes so seised of a life-estate in his wife's land, we are not disposed, and it is not necessary for us to deny in this case; nor the right of his creditors to avail themselves of such estate in discharge of their debts, if they make their levies before he has parted with his estate, though such a claim could hardly be supported, as to the wife's separate estate under the statute of 1846. The demandant here, who stands in the place of the creditors of Ara Morrill's estate, claims under no such right; but his ground is, that to the extent of the husband's interest for life in the first purchase, he was interested in fee in the second purchase, because to the extent of the money paid for his interest, he was owner of the fund applied to the second purchase. By consenting to the sale he acted as owner, and claimed and reduced the money to his own possession, and the money being once by his own act made his own, he could not by any act of his, bestow it upon his wife, so that his creditors could not reach it. We think there is no difficulty arising from this view. If we regard the right of the husband to his wife's estate as a marital right merely, to be exercised as to the property she may receive as distributee of her relatives, at his election, then it seems to follow, that if he elects not to claim it, no interest vests in him; and in equity and in justice, if the property comes to be placed in a situation where his creditors may seize and hold it, it is still the property of the wife, and when its situation is again

changed, the creditors of the husband have lost their opportunity to fasten their debts upon it. Thus, though perhaps in point of strict law, while the wife's property is vested in land, the creditors may levy on his life-estate in it, yet, as between the husband and wife merely, the husband has no separate estate, no personal interest. He is in truth a mere trustee for the wife, having declined to take any interest for himself. When property so situated, is sold and becomes money again, it is hers. What she held herself, and what her husband held, merely as trustee for her, and refused to hold otherwise, is again exclusively in her own hands, as it was at first. By this view justice is done to all parties. The wife has what belonged to her and no more. The husband is not made the unwilling instrument of defrauding his wife of her estate ; and the creditors have no right to complain, because they have no just claim to apply the wife's estate to pay the husband's debts, any more than they have so to apply the property of his parents or children.

When the husband refuses to claim the estate fallen to the wife, or to reduce it to his possession, or in any way to interfere with it for his own benefit, it seems entirely unreasonable to contend, that his acts done for the purpose of enabling his wife to hold and manage the property, shall operate as a claim upon it, or a reduction of it to his possession. To give any reasonable effect to the doctrine, that the husband is not bound to exercise his right to appropriate his wife's property to his own use, and that in default of his claiming it, it remains the property of the wife, it must be held, that the joining of the husband in such acts of the wife as are necessary for the investment, or transfer, or use of the property, and which cannot be done by the wife alone, and acts done by the husband, merely and avowedly as the servant of the wife, if such acts are done in good faith, will not operate either as a claim upon the property, or a reduction of it to the husband's possession.

These views apply, equally, to the amount received as damages for flowing the cellar, and, we think, support the instructions given to the jury as to the last purchase. The note and mortgage was of, and for, property purchased by the wife, but they

Coffin *v.* Morrill.

were signed by the husband and wife. The deed of the wife being inoperative, and her note as such merely void, the deed must be signed by the husband, in order to bind the wife's estate, and the note becomes effectual, as a specification attached to the mortgage. That the husband has so signed does not make the debt his, but if the purchase is made for the wife, and the security made for her debt, and upon her property, the law may well and reasonably regard the transaction just as the parties do. Here the question, by whose money the payments already made were discharged, was submitted to the jury, and the jury having found that those payments were made with the wife's money, the husband's estate could have no interest in the property by reason of his being a party to the mortgage.

The whole of this matter should, independently of technical rules, rest on the intention of the parties. If the husband in good faith refused to claim or reduce to his possession the property, which the act of Providence had given to his wife, while he did whatever was legally necessary for him to do to enable her to manage and dispose of the property, without any change of purpose on his part, it is just to all parties to give effect to intentions so honest and honorable.

We are aware, that the relation of husband and wife may afford opportunities for collusion to preserve the husband's estate from his creditors, under color of its being the estate of the wife. But we think that there is little danger of evil to be apprehended from this cause, compared with the benefits which will result from giving a reasonable security and protection to the wife's interest.

So long as the property of the wife can be clearly traced and distinguished; and so long as we can see the intention of the husband not to avail himself of his marital rights; not to claim the property, nor to reduce it into possession, and the case appears free from fraud or bad faith, there seems no good reason that the creditors of the husband should have the right to treat it as his.

*Judgment on the verdict.*